William R. Brennan, Jr., J.
Claiming to be the lowest responsible bidder, the petitioner seeks a judgment in this *461 article 78 proceeding setting aside the award by the County of Nassau to the corespondent (Broadway Maintenance Corp.) of the contract for the installation of the electrical work in the proposed addition to Meadowbrook Hospital and directing that the contract be awarded to the petitioner. The petition is dismissed on the merits.
The General Municipal Law (§ 103, subd. 1) mandates that awards of contracts for public work .be made under certain circumstances, applicable in this case, “ to the lowest responsible bidder furnishing the required security after advertisement for sealed bids in the manner provided by this section. ” The record indicates that on August 2, 1967 the county opened bids for electrical work on the proposed addition to Meadow-brook Hospital (Contract B-787-X-4) and that all of them were rejected. No question as to the right or propriety of rejection is presented. Included among the bidders was the petitioner who, in conjunction with its bid at that time submitted a surety company bond, specifically referring to Contract B-787-X-4, for 5% of the amount of its bid as required by the Instruction to Bidders.
Obviously, if the proposal were not accepted, the bond would not be binding on its principal or the surety for any purpose.
A new notice for bids scheduled for opening on December 19, 1967 was duly given. The petitioner bid $7,143,000. The next lowest bid was $7,637,000. The latter bid has been accepted, the former rejected, on two grounds: (1) the absence of a proper bond, and (2) the failure of the petitioner to meet financial standards spelled out in Instructions to Bidders contained in so-called Addendum No. 9.
I
The problem of the bond is simply stated. Upon the request for new bids, new contract numbers were assigned in lieu of the numbers used for the August 2nd proposals. The electrical contract was now assigned the “ Contract No. B-787-X-4A ”. It could just as well have been assigned any other combination of numerals and letters. With its second bid (i.e., the bid for December 19th opening) the petitioner submitted the identical bond used for its proposal for the August 2, 1967 entry; in fact, the bond was dated, executed and acknowledged on that date. As noted, this submission was made on December 19, 1967. On the following day, prior to action on the bids made the day earlier, the county received a telegram (subsequently confirmed by letter) from the surety stating that as to the bid opening on December 19, 1967. it “ did not issue and has not *462 issued any bid bond on behalf of P. J. Panzeea Inc. nor any letter commitment to become surety on behalf of P. J. Panzeea Inc. if contract awarded to it * * * for contract identified above [viz., B-787-X4A] ”. The telegram also contained a disclaimer of any liability on any bond accompanying a bid proposal on the subject contract. No other bond has ever been submitted in connection,with the bid here under review.
The county, therefore, took the position that it had no firm bond as required by the Instructions to Bidders. Indeed, it is questionable whether any other position could have been taken since the obligation of the bond as submitted expressly referred to Contract No. B-787-X-4 (the earlier contract), the proposal was made in December, 1967, on bids not even advertised and, therefore, incapable of being referred to as of the date of the bond (August 2, 1967, the date when the bids under the original solicitation were first being received), the new solicitation assigned a new (albeit closely related) number, and the surety gave prompt notice of its intent not to be a party to any bond offered on the later solicitation.
Obviously, the county could have waived the lack of a bond and permitted late filing of one not subject to possible litigation (see Matter of Rockland Bus Lines v. Board of Educ., 43 Misc 2d 1060). It did not elect to do so. It may not be compelled to do so. The county’s objection on the ground that “ no bid bond was submitted with your bid” is, therefore, sustained.
II
The petitioner faces another formidable obstacle to success in this litigation. One of the requirements for all contracts was one intended to establish financial responsibility. Each bidder was required to have a working capital[1] available for the project in an amount determined by decreasing percentages applied to the contract price (i.e., 15% of the first $100,000 plus 10% of the next $90,000 plus 5% of any excess). In this case, the working capital requirement based upon the petitioner’s bid would be $412,500. The petitioner’s working capital as defined in Addendum No. 9, based upon its balance sheet at November 30, 1967, was $227,419.21. The petitioner concedes the foregoing facts, but urges that it had an available line of credit of $250,000. This, too, is not challenged. But what petitioner overlooks is that at the very moment it utilized the line of credit to increase its cash position, it would create an equal and *463 offsetting current liability[2] leaving the working capital unchanged.
In assessing responsibility of a bidder (General Municipal Law, § 103), the county is required to use a common-sense approach and method in arriving at its determination (cf. Matter of Meyer v. Board of Educ., 31 Misc 2d 407, 408). The working capital requirement was not an arbitrary or capricious one; indeed, no suggestion is made to the contrary. However, the petitioner’s contention that its line of credit resolves the problem relies upon a fallacy, to wit, that the use of the line of credit increases assets and does not react upon the minus side of its ledger. The plain answer is that the debit on petitioner’s books for any sum received under the line of credit would immediately give rise to the entry of an equal credit for the liability to repay it.
The respondent county evaluated the factual criteria encompassed in the term “lowest responsible bidder” as amplified by proper requirements for the establishment of. financial strength sufficient to give flesh and substance to the word “ responsible ”. Insofar as this factual determination is concerned, it may not be set aside by this court (cf. Matter of Martone v. County of Nassau, 42 Misc 2d 804, 808). On all of these issues the burden of proof was on the petitioner (Matter of Gaskell, Inc. v. Maslanka, 33 Mise 2d 88, 90). The burden has not been met.
The court is very much aware that its determination sustains an award which exceeds a lower bid. Were price alone the measure of action, there would be no need to establish a standard of responsibility. Price alone is not the standard. And there is no evidence that in treating as a nullity the bond repudiated by the surety thereon, and which was not precisely identifiable with the bid in question, or in imposing a uniform and acceptable measure of determination of “ working capital ”, the public officials involved were arbitrary, capricious or acting otherwise than in full discharge of their responsibilities.

. There is no claim that the line of credit offered by a national bank would make available loans repayable in not less than one year, so that, by definition in Addendum No. 9 and by generally accepted accounting principles, loans made under the line of credit would become current liabilities.

. “Working capital” was defined as “the excess of current assets over current liabilities” (Addendum No. 9, p. 3, item [1], subd. [c].)